## STATUTE OF FRAUDS NOT APPLICABLE TO CONTRACTS TO BE PERFORMED WITHIN A YEAR.

Circuit Court of Cuyahoga County.

THE BOHEMIAN MISSION BOARD OF CLEVELAND V. CHARLES L. FISH ET AL.

Decided, November 24, 1905.

*Statute of Frauds—Contract which May be Performed Within a Year Not Within Statute of Frauds.*

1. Contracts "not to be performed within one year," only include agreements which by a fair and reasonable interpretation of the terms used by the parties and in view of all the circumstances existing at the time do not admit of performance according to the language and intention within a year from the time of the making.

2. Where the promisor agrees to furnish money to pay the salary of a person for a period of two years and thereupon hands the promisee an amount sufficient to pay the first year's salary accompanied with a statement that she will pay a like amount "next year," such promise is not within the statute of frauds.

*Allison Gibbons*, for plaintiff in error.
*Calhoun & Guenther*, contra.

MARVIN, J. (orally) ; WINCH, J., and HENRY, J., concur.

This is a proceeding in error.  The case below was brought by this plaintiff against the defendants as executors of the will of Abigail L. Olney, deceased.  The facts upon which the case was tried are agreed to.  The case was submitted to the court without the intervention of a jury upon an agreed statement of fact.  That agreed statement shows that the plaintiff is a cor poration, not for profit, and that its work is the carrying on of mission work for the spread of the gospel in the city of Cleveland; that for the purpose of carrying on its work it leases ground, erects chapels, employs teachers and preachers; that that work has been carried on for many years by the plaintiff. Further the agreed statement of fact says that on or about the 2d day of October, A. D. 1903, Dr. A. G. Hart and Dr. H. A. Schauffler, as agents for plaintiff, called at the residence of Abigail L. Olney, No. 137 Jennings avenue, Cleveland, Ohio, to obtain a contribution, gift or pledge from her to help the plaintiff in its said work on East Madison avenue.  They stated to her that plaintiff needed a preacher for that work, but that plaintiff had no funds with which to pay and that they could not hire a man unless they knew where the funds to pay him were coming from; that they knew of a fit and suitable man for the work—one Rev. Philip Reitinger; that he would come for a salary of $1,000 a year but would not make a contract for his services for a shorter period of time than two years; that he was a desirable man for the place, but that he had an offer of another position; also that plaintiff must employ him at once, if they desired him at all.  Thereupon said Abigail Olney said that she would furnish the $2,000 needed to pay the cost of the preacher.  She then and there gave them a check for $1,000 for plaintiff and said that she would give them the other $1,000 "next year" for plaintiff's use in paying the salary of said preacher.  Before the end of the year Mrs. Olneyq died.  Plaintiff acted upon the strength of this promise of Mrs. Olney and relied upon it for the money with which to pay the cost of said preacher, and thereupon and at once and upon the same day entered into a contract with the said Rev. Philip Reitinger to employ him as minister in the said work on East Madison avenue

and to pay him the sum of $1,000 per year for two years, ending September 20, 1905. Then it goes on to state that the Rev. Philip Reitinger is performing his part of the contract that he made with them; that they would not have hired him but for the promise of Mrs. Olney, and a suit was brought against the executors of her will to recover the $1,000 to be paid next year.

The trial in the court below resulted in a verdict for the defendants, the defense being that the promise is within the statute of frauds, which reads:

"Section 4199. No action shall be brought whereby to charge the defendant, upon any special promise, to answer for debt, default or miscarriage, of another person; nor to charge any executor or administrator upon any promise to answer damages out of his own estate; nor to charge any person upon any agreement made upon consideration of marriage, or upon any contract or sale of lands, tenements or hereditaments, or any interest in, or concerning them; nor upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

What was the intention here of the parties? Certainly that not later than a year from the date of the promise she would pay the second $1,000, the money sued for in this action, and she might pay it earlier if she would. It can hardly be doubted that the promisor and the promisee both understood that the second $1,000 was to be paid as early as the anniversary of the day of promise. Clearly it could be paid before, but assuming that a fair construction of the language is that the payment should be made on the first anniversary the promise would not then fall within the statute of frauds.

In the case of *Cawthorn* v. *Cordrey*, 13 C.C. (N.S.), 406, it is said:

"A contract for hiring made on the 24th of March for a year's service, to commence on the 25th is not void by the fourth section of the statute of frauds for want of a memorandum."

In *Dixon & Co.* v. *Frisbee*, 52 Ala., 165, the syllabus reads:

"A verbal contract entered into on the 21st day of December, 1870, whereby plaintiff agreed to serve as a clerk for defendants

for a year, commencing on the day thereafter and ending on the 22d day of December, 1871, is a contract to be performed within a year and therefore not within the statute of frauds.''

In the opinion on page 166, this language is used:

''This construction is in accordance with the ordinary rule for the computation of time which excludes fractions of a day.''

In the case of *Sands* v. *Lyon*, 18 Conn., 18, a paragraph of the syllabus reads:

''Where a testator devised land to his son B, on condition that he should pay to A $100 within one year next after the testator's decease; the testator died on the 2d day of October, 1841; the 2d day of October, 1842, was Sunday; and B tendered the money to A on Monday, the 3d day of October, 1842; it was held: 1, that in the computation of the year within which the money was to be paid, the day of the death of the testator should be excluded; and 2, that the expiration of the year, according to that mode of computation, occurring on Sunday, the tender made on the following day was made in sufficient season.''

On page 27 this language is found in the opinion of the court:

''We do not entertain a doubt that, by the language of the testator, in the present instance, it would be generally known and understood that the payment mentioned in the devise, was to be made within a year after the day of the testator's decease, excluding that day in the computation.   *   *   *

''The money was to be paid within a specified period after his decease; and it would be generally understood, therefore, that that event must take place before the time from which the payment was to be made, is to be computed; and as the maxim which has been mentioned, would exclude the remaining portion, after his death, of the day on which it occurred, the computation of the year must commence with the beginning of the succeeding day.''

Of course, what is said in this case as to its being a sufficient compliance to make the tender on the 3d of October because the 2d was on Sunday has no application to the case under consideration, but the court distinctly holds that the provision of the will that the devisee should pay $100 within one year next after the testator's decease is fully complied with by tendering

payment on the first anniversary of the death of the testator.

To the same effect is the case of *Weeks* v. *Hull*, 19 Conn., 376. The following language is used in the syllabus of this case:

"The day of the act from which the future time is to be ascertained, is to be excluded from the computation.

"This rule is applicable not only to contracts, wills and other instruments, but to statutes and proceedings under them."

In the opinion in this case the court referred to *Sands* v. *Lyon, supra*, and used this language in reference to that case:

"This was in accordance with the acknowledged rule for the construction of mercantile contracts; and the court proceeded to say, 'that instruments shall be so construed, if possible, as they and the rights depending upon them, shall be upheld, and not destroyed; the presumption being, that instruments are designed to be effectual, and not futile.' This language and course of reasoning is not confined to any specified instance, but embraces every instrument or contract, as well as wills, and applies as forcibly to the construction of statutes, and all proceedings under them, as to other papers, without an allusion to any of the distinctions before mentioned. The case also recognizes another conservative principle, which ought to govern both that case and this, and all others to which it is applicable—that the computation of time should be so made as to protect a right and prevent a forfeiture, if this can be done without violating a clear intention or a positive provision."

*Brown on the Statute of Frauds*, p. 273, says:

"Setting out of view the questions, what is the performance of such an agreement, and what the meaning of the limitation as to time, we are first to ascertain the force of the words 'to be performed.' And on these words much reasoning has been expended. The result seems to be that the statute does not mean to include an agreement which is simply not likely to be performed, not yet one which is simply not to be performed, within the space of a year from the making but that it means to include any agreement which by a fair and reasonable interpretation of the terms used by the parties and in view of all the circumstances existing at the time, does not admit of performance according to its language and intention, within a year from the time of its making.

"Suppose that the parties make *no stipulation as to time;* but the performance of the agreement depends either expressly or by reasonable implication upon the happening of a certain

contingency which may occur within the year. In such case it is settled upon authority and reasonable in principle that the statute shall not apply. The agreement may be performed entirely within the year, consistently with the understanding and rights of the parties.''

We think this might consistently with the understanding and rights of the parties have been performed within a year from the date of the promise. The minister was hired on the day of the promise. She said, ''I will furnish you $1,000; I will give this $1,000 now, and $1,000 next year.'' We think this might very well have been performed within a year without violation of the understanding of the parties, and it was therefore error on the part of the court below to enter judgment for the defendant.

The judgment is reversed.