Abraham Schlissel, J.
After trial of this action by plaintiff, defendant’s former manager, upon an oral contract of hiring I am convinced (and find as a fact) that plaintiff was hired on Sunday, March 30, 1958 for a period expiring on Sunday, March 29, 1959. I find further that the agreement of March 30, 1958 contemplated total compensation of $12,000, $10,000 of which was to he paid in 52 equal weekly installments of $192.30 each (52 X $192.30 = $9,999.60) and the remaining $2,000 of which represented a guaranteed Christmas bonus in that amount.
In so finding I specifically reject defendant’s claim that this was a hiring at will with only the compensation fixed at a definite annual rate of $10,000 plus a $2,000 bonus.
I am also satisfied (and again find as a fact) that the defense of justified discharge upon which defendant in part relied was not established by the requisite degree of credible evidence. On the contrary I am convinced and hold that plaintiff faithfully and properly performed his duties as defendant’s manager until the time of his discharge and that such discharge was not for cause but willful and deliberate and in clear violation of the oral arrangements which, I have found, were entered into between the parties.
This then leaves for consideration and determination the impact hereon of section 31 of the Personal Property Law which, so far as presently material, provides that: ‘ ‘ Every agree-
ment, promise or undertaking is void, unless it or some note or memorandum thereof he in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1. By its terms is not to he performed within one year from the making thereof ”.
In view of my conclusion enunciated above that plaintiff’s employment was intended to run from Sunday, March 30, 1958 through Sunday, March 29, 1959 I might well consider that the quoted provision was not even superficially involved here. However, I prefer not to rest my decision on so narrow a base even *322 though I am convinced that plaintiff’s work, whenever physically begun, would end on Sunday, March 29, 1959. In this connection it is, I think, to be noted that the same considerations which made it impossible for plaintiff to work on Monday, March 31, 1958 would be equally operative on Monday, March 30, 1959. At least there was no evidence suggesting that defendant had abandoned its Monday closings. Furthermore it can hardly be supposed that such a change, if made and proved, could transform a valid agreement into one both invalid and unenforcible.
Assuming that an oral contract was entered into on Sunday, March 30, 1958 for one year with physical performance thereunder to begin on Tuesday, April 1, 1958 (only because of the happenstance that defendant Club, like many others of like character, was closed Mondays), I should nonetheless hold that the quoted language of section 31 would not bar recovery by plaintiff herein.
In this connection I am convinced and find that the telephone conversation of Sunday, March 30, 1958 had the effect of immediately making defendant the master and plaintiff its servant and that from such moment on plaintiff became obligated to work for defendant which eo instanti became his employer with all that that relationship implied. Specifically I am satisfied and find that from that moment forward the words of mutual affirmation and cross-obligation having been- spoken, plaintiff was not privileged to seek employment elsewhere nor defendant privileged to consider another for the position which it had pledged to give (and had indeed given) to plaintiff.
It is true that plaintiff was not paid for Monday, March 31, 1958 and that on April 4, 1958 he was tendered and accepted $128.30 for Tuesday (April 1) through Friday (April 4). However I am convinced that this was only because plaintiff underestimated and misunderstood the true extent of his rights and failed to appreciate that he was also entitled to be paid for Monday, March 31 just as he was, in effect, paid for every succeeding Monday. In any event I hold that plaintiff’s acceptance, without apparent demur, of his first week’s pay from which compensation for Monday, March 31, 1958 Avas excluded does not, as matter of either laAv or fact, bar his enforcement here of his rights under the agreement of March 30, 1958.
As is not uncommon both parties have placed heavy reliance upon a single decision, to wit, that of the Appellate Term, First Department, in Prokop v. Bedford Waist d Dress Co. (105 Misc. 573). After an earnest and close study of the cited case and on the basis of further research undertaken voluntarily and conducted independently of the excellent memoranda submitted *323 by both attorneys I have reached the conclusion that the brilliant opinion of Mr. Justice Bijur in Prohop supports both the contentions of plaintiff and the determination here reached and hereinbefore announced.
In Prokop, as here, it was claimed by defendant employer that the oral contract involved was not enforcible because physical work thereunder was not to begin until a subsequent date. There it was a Saturday agreement under which work was to start on Monday; here it is a Sunday night agreement physical performance under which could not (because defendant club remained closed on Monday) commence until Tuesday. In both events I most humbly and respectfully subscribe to and adopt the view of Mr. Justice Bijur (pp. 574-575) that:
‘ ‘ the mere fact that physical work is not begun or required to be performed under a contract of service until a particular day subsequent does not necessarily imply that the performance of the contract within the language of subdivision 1 of section 31 of the Personal Property Law (the Statute of Frauds) has not begun at an earlier date. The statute reads, so far as applicable: 1 Every agreement * * * is void ’ unless it be in writing ‘if such agreement: 1. By its terms is not to be performed within one year from the making thereof. ’
“ It was held in McAleer v. Corning, 50 N. Y. Super. 63, 65: ‘ If a contract of hiring is made for one year, to begin in praesenti, no services to he done hy the employee until a future day, the contract is operative from the day of its making, and the year ends with the ending of one year from that day. It might be a natural mistake for a layman to think that as a year of actual affirmative service could not begin until some service was done; that the contract for services was not operative until the day when something was to be done by him.’ See also Sprague v. Foster, 48 Ill. App. 140. In other words, the contract becomes operative and its performance is begun when the one contractor becomes a servant and the other an employer, i.e., when the former comes under the obligation which that relation implies.” ';
In Prokop (p. 574) the foregoing considerations were held to justify a refusal to charge that “ if the jury believe the plaintiff’s version that an agreement was made on September 22, but that plaintiff was to commence in the performance of that work on the following Monday, that they must find for the defendant under the Statute of Frauds.” Accordingly a judgment for plaintiff based on the jury’s verdict was unanimously affirmed.
Here, I believe, that the quoted considerations justify the conclusion I have reached and hereinbefore stated and which *324 I now confirm and reaffirm that plaintiff’s enforcement of the agreement of March 30, 1958 is not barred by the Statute of Frauds. In reaching this determination I rely, in part, on my firm conviction that the contract between the parties became operative and its performance was begun on Sunday, March 30, 1958 when plaintiff became the servant or employee of defendant which was at that very instant his employer and master free to command him to any action not beyond the proper scope of his arrangements with it. The circumstance that defendant, for reasons of its own and dictated solely by its desires, elected not to avail itself of plaintiff’s services until Tuesday morning should not, I feel, bar enforcement of the agreement of March 30, 1958 or plaintiff’s recovery of such additional compensation as may be due him thereunder.
The Statute of Frauds, while expressive of our public policy, is at best an instrument of repression sometimes appearing to deny equity. In any case it should not, I think, be extended beyond its express scope and used as an excuse to refuse relief which would otherwise be freely and indeed almost automatically granted.
If I were convinced that section 31 barred recovery here I would of course be bound by my oath as a judicial officer to enforce it however distasteful I might find such enforcement to be. It is however equally true that I am under a corresponding obligation to refuse to deny recovery where I believe, as I do here, that neither the letter nor the spirit of the statute commands it.
It is therefore directed that judgment be entered herein in plaintiff’s favor for the sum of $2,371.74 (which I find to be the balance of salary due plaintiff and the damages recoverable because of his wrongful discharge), together with appropriate interest and costs.
Defendant shall have 10 days ’ stay of execution of said judgment ; said period to be computed from the date of service of a copy of such judgment with notice of entry on its attorneys.
All motions on which decision was heretofore reserved are now disposed of consistent with this opinion.